IN THE MATTER OF THE ESTATE OF CELEDONIO ORTIZ, DECEASED.

[No. 6,270; decided October 1, 1888.]

Distribution—Death of Heir Pending Administration.—Manner of distribution where an heir or devisee dies pending administration and his estate is unsettled at the time of distribution.

Distribution.—Form of Decree for Partial Distribution where an heir or devisee dies pending administration.

Edward J. Pringle, Sr., for Applicant.

COFFEY, J. Where an administrator dies pending administration, and a new administrator is appointed, and the

first administrator is one of the heirs, should this estate be kept open until the estate of the deceased administrator's estate is administered and distributed and let his heirs go with the decree of distribution to the first estate, or let the first estate continue and distribute the share of the deceased administrator to "his estate"?

Answer: If, while the administration of the estate of A is pending, B, an heir, legatee or devisee, should die, the general practice in department No. 9 was to administer the estate of B, and to distribute the interest which B had in the estate of A to the persons entitled thereto. Those persons then apply in the estate of A for distribution to them of the share to which they are entitled as successors in interest of B. The last estate should be distributed first; otherwise the court cannot, without a decree of distribution in the estate of B, know who are the successors in interest of B. This was the rule declared and adopted in the Estate of Cronin, Myr. Pro. Rep. 252.

One exception to this rule was in the estate of Dr. Levi C. Lane, founder of the Lane Hospital. He left a will by which he gave all his estate to Pauline C. Lane, his wife, and appointed her and Dr. Taylor executrix and executor. She died pending the administration, leaving a will in which she appointed Thomas I. Bergin and R. H. Lloyd executors. These gentlemen claimed that the distribution of the estate should be to them as executors of the last will and testament of Pauline C. Lane, in trust for the persons beneficially entitled thereto, and this was agreed to by the court, department 9: Estate of Levi Cooper Lane, No. 26,571.

The Cronin case was decided December 31, 1879. John Cronin died testate April 1, 1872, seised of real estate. A portion of the estate was devised to his wife, Johanna Cronin, who subsequently died testate, and administration of her estate was also pending. Both estates were ready for distribution. The direction of the court was asked as to the proper mode of distribution; that is whether the interest of the estate of Johanna Cronin in the estate of John Cronin, acquired by her through the will of her husband, should be

distributed, in the distribution of the estate of John Cronin, to the executor of the will of Johanna Cronin, or to the devisees named in the will of Johanna Cronin.

On these facts Judge Myrick rendered the following opinion: "It is not the province of an executor or administrator to take title on distribution; he administers upon the title of the testate or intestate, and the object of his administration is to pay the debts and ascertain who is entitled to the surplus. The proper course to pursue in these cases is, to close the estate of Johanna Cronin, by having distribution of her estate, including her interest in the estate of John Cronin, to her devisees, and then let those devisees go with the decree of distribution to the estate of John Cronin, and apply to have the interest of Johanna Cronin in the estate of John Cronin distributed to them as successors in interest of Johanna Cronin as found in the decree of distribution of her estate."

This course was pursued, and thus both estates were disposed of.

The same principles would apply, as well to the estates of intestates as of testates.

The judge who decided the Cronin case, in an opinion written by him while he was on the supreme bench, suggested that it was impracticable to carry out the course he indicated in the Cronin case.

The practice now pursued in the probate department was adopted after discussion in the Estate of Celedonio Ortiz (old number 6270), the question arising on the death of heir pending settlement of father's estate.

*Must the share be distributed to heir's estate, or await final distribution in the heir's estate, that the latter's heirs at law may be first ascertained?*

The probate department held in accord with the argument of the late Edward J. Pringle, subsequently supreme court commissioner, that partial distribution might be made to the personal representatives of the decedent in the junior estate to be held pending its administration for the persons ascertained therein to be entitled to succession.

The same view was adopted in the Estate of McLaughlin, wherein the Hon. A. L. Rhodes, former chief justice of the supreme court, subsequently judge of the superior court of Santa Clara county, and now practicing therein, contended that the Cronin case enunciated an incorrect, as well as an inconvenient, if not impracticable, principle, and that the true rule was that applied in the Ortiz case. The points and authorities and opinion in these cases were published in the old "Law Journal" of September 28, 1890, and republished September 29, 1891, and the decree of partial distribution in the Estate of Ortiz to the heirs at law of a daughter dying pending the settlement of the father's estate, prepared by Mr. Pringle, October 1, 1888, was published in "The Recorder" December 16, 1903, as a precedent.

### Decree of Partial Distribution to the Heirs at Law of Virginia Ortiz Turner.

Daniel Turner, administrator of the estate of Virginia Ortiz Turner, deceased, having heretofore filed herein on the tenth day of July, 1888, a petition for partial distribution of the share or portion of the said Virginia Ortiz Turner of the personal property of the estate of the said Celedonio Ortiz, deceased, in the state of California, upon his giving bonds with security for the payment of the due proportion of the debts of the estate of the said Celedonio Ortiz.

And said petition for distribution coming on this day regularly to be heard, proof having been made to the satisfaction of the court that due and legal notice of the said hearing of the said petition for partial distribution had been given in the manner and for the time heretofore ordered and directed by this court, and it appearing that on the twenty-sixth day of September, 1887, letters testamentary were duly issued to Vicente Cagigal y Pezuela, as the executor of the last will and testament of the said Celedonio Ortiz, deceased, thereinbefore duly admitted to probate, that an inventory of said estate of Celedonio Ortiz had been filed by the said Vicente Cagigal y Pezuela, and appraisement made and filed herein, and it appearing that the publication of notice to the creditors of the said estate of Celedonio Ortiz to present their claims against the said estate was made in accordance with

the order of this court in that behalf duly made herein; and that the first publication of said notice to creditors was made on the fifth day of October, 1887, and it appearing that the said estate of Celedonio Ortiz is but little indebted in the state of California, and that the share of the estate of Virginia Ortiz Turner, as hereinafter described, may now be distributed, without loss to the creditors of the estate of the said Celedonio Ortiz, and it appearing that more than four months have elapsed since the issuance of said letters testamentary to the said Vicente Cagigal y Pezuela, as aforesaid, that the said Virginia Ortiz Turner, a daughter of the said Celedonio Ortiz, deceased, died intestate on the sixteenth day of April, 1887, in the republic of Mexico, being at the time of her death a resident of the city and county of San Francisco, state of California, and leaving estate in said city and county, and that the said estate consists of the interest of the said Virginia in the estate of her father, the said Celedonio Ortiz, who died on the fifth day of April, 1887, that heretofore, to wit, on the eleventh day of June, 1888, Daniel Turner, the husband of the said Virginia, upon due application to this court, was appointed the administrator of the estate of the said Virginia Ortiz Turner and that the said Daniel Turner thereupon duly qualified as such administrator and entered upon the duties of the said administration, and is still the duly qualified and acting administrator of the estate of the said Virginia Ortiz Turner, deceased.

That the said Virginia Ortiz Turner is the same person named in the will of said Celedonio Ortiz, deceased, as an heir and legatee of the said decedent under said last will and testament, and was under the said will entitled to one-eighth (1/8) of the estate of the said Celedonio Ortiz, deceased.

And it appearing that a bond in the penal sum of $2,500 is sufficient to protect creditors of the said estate of Celedonio Ortiz, deceased, from any injury that may arise from the distribution of the hereinafter described personal property.

And it appearing that partial distributions have heretofore been made to all the other devisees of the said Celedonio Ortiz, deceased, of their respective shares of the personal property of the estate of said Celedonio Ortiz, deceased, in the state of California, and that the share of the said per-

sonal property to which the estate of the said Virginia Ortiz Turner is entitled consists of moneys to the amount of $556.67, and seventy-five (75) shares of the capital stock of the Spring Valley Waterworks, and nine (9) and three-eighths (⅜) shares of the capital stock of the California Powder Works, and one-eighth (⅛) part of forty (40) shares of the capital stock of the Security Savings Bank or certificate for installment No. 1 on subscription for forty shares of the capital stock of the said Security Savings Bank, and it appearing that there has accrued upon such distributive shares of the said Virginia Ortiz Turner since the said partial distribution to the other devisees dividends on stock as follows, viz.:

Of the Spring Valley Waterworks the sum of.......$225.00
Of the California Powder Works the sum of........  56.34
Of the Security Savings Bank the sum of..........  21.87

all amounting to the sum of....................$303.21
which have been received and are now held by the said Vicente Cagigal y Pezuela, as the executor aforesaid:

Now, therefore, it is hereby ordered, adjudged and decreed that the said personal property, viz.: The sum of $556.67, and seventy-five (75) shares of the capital stock of the Spring Valley Waterworks, and nine (9) and three-eighths (⅜) shares of the capital stock of the California Powder Works, and one-eighth (⅛) part of forty (40) shares of the capital stock of the Security Savings Bank, or certificates for installment No. 1 on subscription for forty shares of the capital stock of the said Security Savings Bank· and the following dividends of stock, viz.:

Of the Spring Valley Waterworks the sum of......$225.00
Of the California Powder Works the sum of........  56.34
Of the Security Savings Bank the sum of..........  21.87

be and the same is hereby distributed to the heirs at law of the said Virginia Ortiz Turner, deceased, and that the possession of the same be given by the said executor to the said Daniel Turner, administrator of the estate of the said Virginia Ortiz Turner in trust for the purpose of the administration of the estate of the said Virginia Ortiz Turner, de-

ceased, and for the heirs at law entitled thereto, upon the said Daniel Turner, administrator, giving the said bond of $2,500 for the protection of the creditors of the estate of the said Celedonio Ortiz, deceased.